CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

OCT 27 2005

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| C.T.L., et al., <br> Plaintiffs, | ) <br> ) <br> ) Civil Action No. 1:05cv00004 <br> ) |
| v. | ) <br> ) **MEMORANDUM OPINION** <br> ) |
| PEOPLE INCORPORATED OF <br> SOUTHWEST VIRGINIA, et al., <br> Defendants. | ) <br> ) <br> ) By: GLEN M. WILLIAMS, <br> ) Senior United States District Judge |

C.T.L., an infant, by and through his mother, Kelly Cassidy, and Kelly Cassidy in her own right, brought this suit against defendants People Incorporated of Southwest Virginia, ("People Incorporated"), Betty Zickafoose and Valerie Maxwell, alleging negligence, intentional infliction of emotional distress and violations of civil rights. This matter is currently before the court on defendants' Motion To Dismiss Second Amended Complaint, (Docket Item No. 23), ("Motion To Dismiss"), filed on August 8, 2005, and defendants' Motion For More Definite Statement, filed August 8, 2005. (Docket Item No. 24.) The court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and 1441.

*I. Background*

For purposes of the court's consideration of defendants' motions, the facts as alleged by the plaintiffs will be accepted as true. On or about February 2, 2001,

-1-

C.T.L., then three years old, boarded a bus provided by People Incorporated's Head Start program to transport children from their residences to the Head Start facility in Bristol, Virginia. Because of his age and weight, C.T.L. was secured in an infant car seat. C.T.L. also needed assistance in exiting the car seat, but when the bus arrived at the Head Start facility, C.T.L. was not removed from his car seat. However, everyone else exited the bus and entered the Head Start facility. Between 40 minutes to one hour later, C.T.L. was found on the front step of the facility, barefoot and in a frantic and hysterical state. Apparently, C.T.L. had extricated himself from the bus, losing his shoes in the process, and found his way to the front door of the facility. Once C.T.L. was inside the building, Head Start employees instructed him to refrain from informing his mother of the incident, to which he complied. No one from the Head Start facility informed C.T.L.'s mother of the incident either.

The next school day following the incident, C.T.L. kicked and screamed when it was time to board the Head Start bus. C.T.L.'s mother, not knowing of the incident, physically forced C.T.L. onto the bus and into his car seat. No one from the Head Start facility ever informed C.T.L.'s mother of the incident, although one employee did notify the Virginia Department of Social Services in Bristol, Virginia, ("Social Services"). A Child Protective Services investigation ensued, and C.T.L.'s mother learned of the incident when she was contacted by an employee of Social Services. The Child Protective Services investigation resulted in a finding that C.T.L. was a neglected child through no fault of his own or that of his mother, and the incident had placed the child at a moderate risk. In an effort to make amends, People Incorporated dispatched an agent to visit C.T.L. and his mother and to counsel and to deliver a gift. The gift was a toy school bus.

After the incident, C.T.L. developed separation anxiety upon being separated from his mother. He also suffered from developmental problems such as nightly bed wetting, insomnia and sleep disturbance. C.T.L. underwent a lengthy course of counseling in an attempt to deal with the regression and developmental problems. Cassidy was forced to quit her job to stay home with C.T.L. and to buy mattresses, bedclothes and pull-ups.

## II.  Analysis

The defendants advance several arguments in support of their motion to dismiss. First, they argue that plaintiffs' allegations are insufficient to state a claim for negligence as to both C.T.L. and Cassidy. (Motion To Dismiss at 1.) Second, the defendants argue that plaintiffs' intentional and outrageous conduct claim should be dismissed because plaintiffs did not sufficiently allege outrageous conduct and severe emotional distress. (Motion To Dismiss at 2.) Third, the defendants argue that plaintiffs' civil rights claim should be dismissed because the allegations do not show that People Incorporated is a state actor, that a specific civil right was violated and that there was a severe injury. (Motion To Dismiss at 2.) The defendants also argue that plaintiffs' claims are insufficient to provide a basis for awarding attorney's fees and/or punitive damages. (Motion To Dismiss at 3.) The defendants further ask the court to order plaintiffs to provide a more definite statement of the physical injuries that C.T.L. suffered. (Motion For More Definite Statement at 1.)

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil

-3-

Procedure 12(b)(6), the court should accept as true all well-pleaded allegations and view the complaint in a light most favorable to the plaintiff. *De Sole v. U. S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). "[A] rule 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). The court may not dismiss a complaint unless the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### A. Negligence

The defendants argue that plaintiffs' negligence claim should be dismissed as to both C.T.L. and Cassidy. With respect to Cassidy, the defendants argue that the allegations do not show that there was a duty owed to her. (Motion To Dismiss at 1.) Furthermore, the defendants argue that the allegations do not indicate that Cassidy suffered a physical injury. (Motion To Dismiss at 1.)

The court will first address defendants' argument that plaintiffs' allegations fail to allege that Cassidy suffered a physical injury. Under Virginia law, a plaintiff cannot recover solely for emotional damages caused by a defendant's negligent conduct, if there was not also an accompanying physical injury to the person. *Connelly v. Western Union Tel. Co.*, 100 Va. 51, 54-55 (1902). Absent a

contemporaneous impact to the plaintiff, a plaintiff must prove that the defendant's conduct was willful, wanton or vindictive and not merely negligent, to recover solely for emotional damages. *Soldinger v. U. S.*, 247 F. Supp. 559, 560 (E.D. Va. 1965). However, when a claim is for both emotional *and* physical damages, a plaintiff can recover for the emotional damages caused by a defendant's negligent conduct, absent a contemporaneous physical impact to the plaintiff, provided the plaintiff pleads and proves by clear and convincing evidence that her physical injury was proximately caused by the defendant's negligence. *Hughes v. Moore*, 214 Va. 27, 34 (1973). The plaintiffs failed to allege in their complaint that Cassidy suffered from physical damages or that defendants' failure to retrieve C.T.L. was willful, wanton or vindictive; accordingly, the court will grant defendants' motion to dismiss Cassidy's negligence claim.[1]

With respect to C.T.L.'s negligence claim and Cassidy's claim for expenses based on the alleged injury to C.T.L., the defendants argue that his injuries were not the foreseeable, probable result of leaving him on a bus for an hour. (Motion To Dismiss at 1.) However, the court finds plaintiffs' allegation sufficient to withstand the motion to dismiss. Pursuant to Federal Rule of Civil Procedure 8(a), a party need only include in her complaint a "short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief the pleader seeks." Furthermore, "each averment of a pleading shall be simple, concise, and

---

[1] A review of the Second Amended Complaint raises question as to whether the plaintiffs actually pled a negligence claim on behalf of Cassidy in her own right other than her right to seek recovery for her expenses incurred as a result of the alleged injury to C.T.L. *See* Va. Code Ann. § 8.01-36 (Rep'l. Vol. 2000).

-5-

direct." Fed. R. Civ. P. 8(a). "No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e). A plaintiff is only required to include such detail that will notify the defendant of the claims against him. *Conley*, 355. U.S. at 47-48.

Plaintiffs allege that C.T.L. suffered "physical injury and discomfort." (Plaintiffs' Second Amended Complaint at 5.) In light of the notice pleading standard, this language cures the defect present in plaintiffs' prior complaints and adequately apprises the defendants of the claim against them. The court finds unpersuasive defendants' contention that the negligence claim should be dismissed because C.T.L.'s injuries were not the foreseeable, probable cause of leaving him on a bus for an hour. Under Virginia law, foreseeability is ordinarily a question for the jury. *See Jordon v. Jordan*, 220 Va. 160, 162 (1979). It is only when reasonable men could not disagree on the facts and inferences draw therefrom that foreseeability becomes an issue for the court. *See Jordon*, 220 Va. at 162. The issue of foreseeability is not so clear in this case that the court will remove the issue from the jury. Therefore, the court denies defendants' motion to dismiss C.T.L.'s negligence claim and Cassidy's claim for expenses.

The court also denies defendants' motion for a more definite statement. Motions for a more definite statement are only permitted where a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading. Fed. R. Civ. Pro. 12(e) (2005). Since the second amended complaint notifies the defendants of the claims against them, they can reasonably be expected to form a responsive pleading, irrespective of the fact that they may not be aware of the exact physical damages that C.T.L. suffered. Discovery is the appropriate venue for

the defendants to obtain this information. As such, the court will not grant defendants' motion for a more definite statement.

### B. Intentional and Outrageous Conduct

The defendants next argue that plaintiffs' claim for intentional and outrageous conduct should be dismissed because the conduct was not outrageous and the alleged emotional distress was not severe. (Motion To Dismiss at 2.)

In order to withstand a motion to dismiss for failure to state a claim for intentional infliction of emotional distress in the absence of a contemporaneous physical injury, a plaintiff must plead: (1) that the defendant's conduct was intentional or reckless; (2) that the defendant's conduct was extreme and outrageous in that it offends against the generally accepted standards of decency and morality; (3) that the defendant's conduct caused emotional distress; and (4) that the emotional distress was severe. *Russo v. White*, 241 Va. 23, 26 (1991) (citing *Womack v. Eldridge*, 215 Va. 338, 342 (1974) (adopting a four-prong test for intentional infliction of emotional distress claims in the absence of physical injury)).

The requirement that the defendant's conduct be extreme and outrageous is aimed at "limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Womack*, 215 Va. at 342. To support a finding of outrageousness, "the conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 241

Va. at 27. In addition, "liability only arises when the emotional distress is extreme, and then only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo*, 241 Va. at 27. A plaintiff in Virginia must allege all facts necessary to establish intentional infliction of emotional distress. *Ely v. Whitlock*, 238 Va. 670, 677 (Va. 1998).

The court finds plaintiffs have adequately pled their cause of action for intentional infliction of emotional distress on behalf of C.T.L. in accordance with the standard announced in *Womack*. In paragraphs 29, 30 and 32, plaintiffs refer to defendants' instruction to C.T.L. to refrain from telling his mother about the incident at school as "outrageous." (Plaintiffs' Second Amended Complaint at 6-7.) Furthermore, plaintiffs have alleged all facts necessary to support this proposition. According to plaintiffs' complaint, employees from People Incorporated intentionally and specifically instructed C.T.L., then three years old, to refrain from telling his mother about a matter of crucial significance to C.T.L.'s development, welfare, health and safety. (Plaintiffs' Second Amended Complaint at 6-7.) These facts clearly support plaintiffs' assertion that defendants' conduct was outrageous.

The court also finds that the plaintiffs adequately pled that the defendants' conduct caused C.T.L. extreme emotional distress. In addition to labeling the emotional distress "severe" in paragraphs 27 and 32, the plaintiffs allege that C.T.L. suffered significant separation anxiety upon being separated from his mother, developmental problems such as nightly bedwetting and insomnia and sleep disturbance. (Plaintiffs' Second Amended Complaint at 5 and 6.) C.T.L.'s problems were so severe that he had to undergo a lengthy course of counseling and Cassidy had

to quit her employment to stay at home with C.T.L. (Plaintiffs' Second Amended Complaint at 5.) Cassidy was also forced to buy mattresses, bedclothes and pull-ups to deal with the severity of C.T.L.'s problems. (Plaintiffs' Second Amended Complaint at 5.) Certainly, no reasonable person should be expected to endure such injuries. While the defendants rely on *Russo* in arguing that plaintiffs' injuries are not severe, (Motion To Dismiss at 2), the facts in *Russo* differ significantly from those present in this case. Unlike the plaintiff in *Russo*, who did not claim that she had any objective physical injury caused by the stress, that she sought medical attention or that she lost income as a result of her injuries, C.T.L. did allege physical injuries and did seek medical attention.

Nonetheless, plaintiffs have not adequately pled that Cassidy suffered severe emotional distress. Plaintiffs have not included any facts in their complaint to support such a proposition. The fact that Cassidy had to quit her employment and spend money on C.T.L. merely supports the allegation that C.T.L. suffered from severe emotional injuries. Therefore, the court will deny defendants' motion to dismiss the intentional infliction of emotional distress claim with respect to C.T.L. but will grant the motion with respect to Cassidy.

C. *Civil Rights Violation*

The defendants also argue that plaintiffs' claim for a civil rights violation is insufficient because it does not show that People Incorporated is a state actor, does not identify the specific civil right allegedly violated and does not sufficiently allege a severe injury. (Defendants' Motion To Dismiss at 2.)

-9-

Under 42 U.S.C. § 1983, there is a cause of action for violations of rights conferred under the Constitution and federal laws against persons acting under color of state law. *See* 42 U.S.C.A. § 1983 (West 2003). In most settings, "color of law" is the equivalent to "state action" under the Fourteenth Amendment. *U.S. v. Price*, 383 U.S. 787, 794, n.7 (1966). In determining whether someone is subject to suit under § 1983, the question is whether the alleged infringement of federal rights is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). This inquiry is essentially fact specific. *Lugar*, 457 U.S. at 939. State action has been found where the state has exercised coercive power or has provided significant encouragement, either overt or covert. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999). State action has also been found when a private entity has exercised powers that are traditionally the exclusive prerogative of the State. *See Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982). State action can further be found in circumstances where a private actor operates as a "willful participant in joint activity with the State or its agent." *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001).

Plaintiffs allege that People Incorporated is a state actor by virtue of receiving federal, state and local funds by which it is subject to federal, state and local regulation. (Plaintiffs' Second Amended Complaint at 7.) Plaintiffs also argue that discovery will reveal the extent of governmental entanglement. On the other hand, defendants rely on *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), for their contention that the receipt of public funds is insufficient to prove that an entity is a state actor. (Motion To Dismiss at 2.) While the receipt of public funds did not compel a finding of state action in *Rendell*, this holding does not preclude a finding that public funding,

-10-

Case 1:05-cv-00004-GMW-PMS   Document 28   Filed 10/27/05   Page 10 of 15   Pageid#: 154

taken in conjunction with other facts, is sufficient in other cases. Furthermore, in light of the notice pleading standard and the fact that the determination of state action is fact specific, the court finds that plaintiffs' claim is sufficient on this basis.

Defendants also argue that plaintiffs do not identify the specific civil right allegedly violated. (Motion To Dismiss at 2.) However, plaintiffs allege in paragraph 36:

> Cassidy had a fundamental liberty interest guaranteed by the Due Process Clause of the 5th Amendment, and made incumbent upon state actors by virtue of the 14th Amendment, to be promptly informed of all matters affecting the liberty, health, safety and welfare of her infant child, when such child is in the custody of an entity acting, under color of state law, in parentis loci with the child.

(Plaintiffs' Second Amended Complaint at 8.) Plaintiffs also allege that C.T.L. had a fundamental liberty interest to not be subjected to unlawful restraint and/or false imprisonment, which is a right guaranteed under the Due Process Clause of the Fifth Amendment and the prohibition against cruel and unusual punishment contained in the Eighth Amendment. (Plaintiffs' Second Amended Complaint at 8.)

The court recognizes that the United States Constitution protects the fundamental liberty interest that parents hold to shape and direct the lives of their children during the ages of minority. *See Hodgson v. Minn.*, 497 U.S. 417, 447 (1990). In fact, "the interest of parents in the care, custody and control of their children–is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The

-11-

United States Supreme Court has stated, "it is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Mass.*, 321 U.S. 158, 166 (1944). In upholding a state parental notification statute for abortions on minors, the Fourth Circuit stated, "such a notice statute serves the compelling state interest in securing inviolate the right of a mother and father to rear their child as they see fit, and to participate fully in that child's life, as free from governmental interference as constitutionally permissible." *Planned Parenthood v. Camblos*, 155 F.3d 352, 367 (1998).

In the case at hand, agents of People Incorporated specifically told a three year old to refrain from telling his mother that he was left in his car seat on the Head Start bus for an hour, to which he complied. No one from Head Start told Cassidy about this unfortunate event either. As a result, Cassidy forced her son onto the Head Start bus the following school day despite his cries and pleas. The court finds that plaintiffs adequately pled a degree of state interference with the fundamental liberty interest of a parent to shape and direct the life of her child.

However, the court finds that plaintiffs have not adequately pled state interference with C.T.L.'s civil rights. The Fourth Circuit has held that the Due Process Clause is not implicated by a state official's *negligent* act causing unintended loss of injury to life, liberty or property. *See Daniels v. Williams*, 474 U.S. 327, 328 (4th Cir. 1986). While plaintiffs advance that defendants' act of leaving C.T.L. on a bus subjected him to unlawful restraint and/or false imprisonment, they use the same conduct to support their claim for negligence. Plaintiffs do not contend that

-12-

defendants left C.T.L. on the bus intentionally or intended to cause a loss of injury to life, liberty or property; to the contrary, plaintiffs assert that such conduct was negligent. Therefore, the court finds that the plaintiffs have failed to adequately allege interference with C.T.L.'s civil rights.

Lastly, the defendants argue that plaintiffs' civil rights claims should be dismissed because plaintiffs do not sufficiently allege a severe injury. (Motion To Dismiss at 2.) To support this contention, defendants rely on *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980), and *Brown v. Ramsey*, 121 F.Supp. 2d 911 (E.D. VA. 2000). Ignoring for a moment that this court has already found that C.T.L. alleged severe emotional injuries in its discussion of plaintiffs' claims for intentional infliction of emotional distress, the defendants are clearly mistaken that a plaintiff must allege a severe injury to withstand a motion to dismiss a civil rights claim. The cases that defendants rely on both involve school corporal punishment, and a plaintiff in such a case must allege that the force applied to the child caused severe injury in order to state a claim for violation of substantive due process. However, this burden is not present in all civil rights actions. Accordingly, the court will deny defendants' motion to dismiss Cassidy's civil rights claim.

### D. Attorney's Fees

Defendants argue that plaintiffs' claim for attorney's fees should be dismissed because plaintiffs do not allege that they are entitled to such fees under a contract or statute. (Defendants' Motion To Dismiss at 3.) Since 42 U.S.C. § 1988 permits the court to award reasonable attorney's fees in actions brought under 42 U.S.C. § 1983, the court will not dismiss the claim for attorney's fees. *See* 42 U.S.C.A. § 1988 (West

2003).

### E. Punitive Damages

Defendants next argue that plaintiffs' claim for punitive damages should be dismissed because the allegations are insufficient to state a claim for an intentional tort and do not show that defendants consciously disregarded the safety of others. (Defendants' Motion To Dismiss at 3.)

The court will note at the outset of the discussion on punitive damages that the court is allowing C.T.L.'s intentional infliction of emotional distress claim to stand; therefore, C.T.L. has sufficiently alleged an intentional tort. In response to defendants' second argument, under Virginia law, punitive damages are only allowed when there is misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others. *See PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 345 (2003). Furthermore, if reasonable persons could differ regarding whether the conduct in question was so willful and wanton as to show a conscious disregard for the rights of others, than the question is one for the jury. *See PGI Inc.*, 265 Va. 346. According to the plaintiffs' second amended complaint, the agents of People Incorporated negligently, carelessly and recklessly left C.T.L. on the bus and negligently, recklessly and/or intentionally instructed C.T.L. to refrain from telling his mother about the incident. Viewing the complaint in a light most favorable to the plaintiffs, reasonable persons could differ as to whether this conduct was so willful and wanton as to show a conscious disregard for the rights of others. Therefore, the court will deny defendants' motion to dismiss plaintiffs' claim for punitive damages.

-14-

### III. Conclusion

For the foregoing reasons, the court will sustain in part the defendants' motion to dismiss insofar as the Second Amended Complaint states a claim for negligence by Cassidy in her own her right, a claim for intentional infliction of emotional distress by Cassidy in her own right and a claim for a civil rights violation by C.T.L. in his own right and will overrule in part the defendants' motion to dismiss insofar as C.T.L.'s claim for negligence, Cassidy's claim for expenses based on the alleged injury to C.T.L., C.T.L.'s claim for intentional infliction of emotional distress and Cassidy's claim for a civil rights violation. The plaintiffs' claims for attorney's fees and punitive damages will not be dismissed. The court will further overrule defendants' motion for a more definite statement.

An appropriate order will be entered.

DATED: This __27__ day of October, 2005.

_/s/ Glenn M. Williams_

SENIOR UNITED STATES DISTRICT JUDGE